# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## SOUTHERN DIVISION

BRYSON GALLOWAY,

     Plaintiff,

v.

                             Case No. 1:11-cv-663-MEF
                             (WO—Publish)

CITY OF ABBEVILLE, ALABAMA,
et al.,

     Defendants.

## MEMORANDUM OPINION AND ORDER

### I. INTRODUCTION

Four of the five defendants in this case have moved to dismiss the claims against them. The City of Abbeville and Officer John Duhaime filed the first Motion to Dismiss (Doc. # 12), followed by similar Motions to Dismiss filed by Henry Count, Alabama (Doc. # 16), and Sheriff William Maddox (Doc. # 18). In response, Galloway's lawyer filed a brief contesting the defendants' motions that largely failed to address the arguments made by defense counsel. For the reasons discussed below, the defendants' motions are due to be GRANTED IN PART and DENIED IN PART as set out more fully in this order.

1

## II. Jurisdiction and Venue

The Court has subject-matter jurisdiction over this case under 28 U.S.C §§ 1331 (federal question) and 1343 (civil rights). The parties do not contend that the Court lacks personal jurisdiction over them, nor do they dispute that venue is proper under 28 U.S.C. § 1391(b). The Court finds there are adequate allegations supporting both.

## III. Legal Standard

A motion to dismiss mainly tests the legal sufficiency of the complaint. Fed. R. Civ. P. 12(b)(6). It does not delve into disputes over the proof of the facts alleged—such a crucible is reserved for the summary judgment stage. With this in mind, the Court accepts as true all well-pled factual allegations in the complaint, viewing them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008); *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1057 (11th Cir. 2007). And while a court typically keeps its motion to dismiss inquiry within the four corners of the complaint, the Court may nonetheless consider an outside document when it is undisputed and central to the plaintiff's claims. *Speaker v. U.S. Dep't of Health & Human Servs.*, 623 F.3d 1371, 1379–80 (11th Cir. 2010). The Court will grant a motion to dismiss "when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *Marshall Cnty. Bd. of Ed. v. Marshall Cnty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993).

A motion to dismiss also requires compliance with some minimal pleading

standards. Indeed, although a plaintiff's complaint generally need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), the plaintiff  must still allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007). And "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009). The plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 559. Nor does it suffice if the pleadings merely leave "open the possibility that a plaintiff might later establish some set of undisclosed facts to support recovery." *Id.* at 561.

## IV. Background

As this is a motion to dismiss, the following facts, which the Court accepts as true at this stage in the proceedings, come from the allegations in Galloway's amended complaint.

On May 13, 2010, Bryson Galloway and Carl Brown were standing on the corner of A.B. Cotton Drive and Rock Creek Road in Headland, Alabama. (Doc. # 3 at ¶ 3.) While the two men were waiting for someone to pick Brown up, two unmarked cars approached. (*Id.*) John Babinski exited one of the vehicles and John Duhaime alighted from the other. (*Id.*) Babinski and Duhaime both worked on a joint task force assembled

by the City of Abbeville and Henry County; Babinski came from the City of Abbeville Police Deparment, Duhaime from the Henry County Sheriff's Office. (*Id.*)

Babinski and Duhaime approached Galloway and Brown, asking both men for identification. (*Id.* at ¶ 4.) Brown showed the officers his license, but since Galloway does not drive, and because he stood only a few houses away from his home, he had no identification on him at the time. (*Id.*)

At this point, the officers became combative with Galloway. (*Id.*) He never resisted or attacked the officers (*id.* at ¶ 6), yet they grabbed him, wrestled him to the ground, and then beat him mercilessly. (*Id.* at ¶ 5.) The officers tased Galloway several times, hit him in the head, kicked him, pushed his face into the ground, and pushed their knees into his back. (*Id.*) Galloway suffered a seizure as a result of the beating. (*Id.* at ¶ 6.)

The officers then arrested Galloway for assaulting an officer, resisting arrest, and disorderly conduct. (*Id.* at ¶ 7.) Galloway was taken to jail and he had to post bond to secure his release. (*Id.* at ¶ 8.) On August 12, 2011, he sued Babinski and Duhaime, along with their employers, the Henry County Sheriff's Office and the City of Abbeville Police Department. (Docs. # 1, 3.) He also tacked on a claim against Sheriff William Maddox for good measure. (*Id.*) In his first amended complaint, Galloway's scattershot pleading asserts the following claims:

1. In Count A, he claims the officers violated the Fourth Amendment by using unreasonable or excessive force. He contends that all of the defendants face

liability for Babinski and Duhaime's actions under 42 U.S.C. § 1983. (Doc. # 3 at ¶ 11.)

2.    In Count B, he again claims the officers violated his Fourth Amendment rights, this time by arresting him unlawfully. Galloway contends that the officers lacked probable cause to arrest him, and he again brings his claim under § 1983 and against all of the defendants. (Doc. # 3 at ¶ 13.)

3.    In Count C, Galloway claims that "Babinski drafted and submitted three Complaints and also three arrest reports that contained false statements," which "resulted in [Galloway] being temporarily incarcerated falsely and forced him to post a bond to secure his release." (Doc. # 3 at ¶ 15.) Again, he brings this claim under § 1983 and against all of the defendants. (*Id.*)

4.    In Count D, he claims that the City of Abbeville, Henry County, and Sheriff Maddox failed to supervise Babinski adequately, and contends the defendants acted negligently in their hiring and training of the officers. Galloway further asserts that the City and County's indifference to these problems amounts to a policy or custom creating the climate for the type of incident at issue here. (Doc. # 3 at ¶ 17.)

5.    In Count E, Galloway appears to claim that, because the officers lacked probable cause to arrest him, he was falsely imprisoned in violation of the Fourth Amendment. (Doc. # 3 at ¶ 19.)

6.    In Count F, he asserts a claim for state law battery based on Babinski and Duhaime's actions. Galloway alleges that all of the defendants sued in the complaint are liable for this claim. (Doc. # 3 at ¶ 21.)

7.    In a section titled "Damages," Galloway claims that he sought medical treatment for his injuries, had to post bond for an unlawful arrest, had to pay court costs, incurred physical pain and suffering, and suffered mental anguish, among other alleged injuries. (Doc. # 3 at ¶ 22.) In addition, he asks for punitive damages and attorneys fees in the prayer for relief found in his amended complaint.

Shortly after receiving the amended complaint, and before filing an answer, four

of the defendants moved to dismiss the claims against them. Duhaime argues that the

qualified immunity doctrine inoculates him against civil liability because he reasonably performed a discretionary function. The City, Henry County, and Sheriff Maddox contend that they are either immune or that Galloway failed to allege the existence of a policy or custom that would lead to municipal liability.

## V. DISCUSSION

The Court will address the motions to dismiss using a claim-by-claim analysis, organizing the claims by defendant. First, the Court will address the allegations against John Duhaime, including those brought against him in his official and individual capacities. Next, the Court will turn to the claims against the City of Abbeville. After that, it will analyze the claims against Henry County, Alabama. Lastly, the Court will address the claims brought against Sheriff Maddox.

### A. The claims against John Duhaime

### 1. The official capacity claims against Duhaime

The complaint makes clear that Galloway has sued John Duhaime for money damages "in his individual and official capacities." (Doc. # 3 at ¶ 2.) The Eleventh Circuit Court of Appeals has explained why this is unnecessary: "Because suits against a municipal officer sued in his official capacity and direct suits against municipalities are functionally equivalent, there no longer exists a need to bring official-capacity actions against local government officials." *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991) (internal punctuation omitted). Moreover, "[u]nder the Eleventh Amendment,

state officials sued for money damages in their official capacity are immune from suit in federal court." *Jackson v. Ga. Dep't of Transp.*, 16 F.3d 1573, 1575 (11th Cir. 1994); *see also Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Here, Galloway has not sued for injunctive relief, instead seeking only money damages against Duhaime in his official capacity. The official capacity claims against Duhaime are therefore due to be dismissed for lack of subject matter jurisdiction.

### 2. The individual capacity claims against Duhaime

Duhaime invokes the doctrine of qualified immunity in seeking dismissal of the individual capacity claims brought against him. The qualified immunity doctrine protects officials from the chilling effect that the fear of personal liability would create in carrying out their discretionary duties. *See Anderson v. Creighton*, 483 U.S. 635, 638 (1987). It immunizes "from suit all but the plainly incompetent or one who is knowingly violating the federal law." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (quoting *Willingham v. Loughnan*, 261 F.3d 1178, 1187 (11th Cir. 2001)).

Because qualified immunity is an affirmative defense, the "public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Lee*, 284 F.3d at 1194. "To determine whether an official was engaged in a discretionary function," federal courts look to see whether the disputed acts "fell within the employee's job responsibilities." *Crosby v. Monroe Cnty.*, 394 F.3d 1328, 1332 (11th Cir. 2004) (internal citation omitted). This inquiry does not

ask "whether the act complained of was done for an improper purpose, but 'whether the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of an official's discretionary duties.'" *Plotkin v. United States*, No. 11-12367, 2012 WL 443271, at *2 (11th Cir. Feb. 13, 2012) (quoting *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1282 (11th Cir. 1998)). The allegations here show that Duhaime acted in his law enforcement capacity when he approached Galloway, asked for identification, and arrested him. Since these are all law enforcement activities, he has carried his initial burden of showing he acted in a discretionary function.

Once the defendant seeking qualified immunity shows that he acted in a discretionary capacity, the burden shifts to the plaintiff to show that qualified immunity should not apply. *Lee*, 284 F.3d at 1194. Since Duhaime has shouldered his initial burden, Galloway must show that Duhaime violated one of his constitutional rights, and that the claimed right was clearly established when the challenged conduct occurred. *Ashcroft v. al-Kidd*, 563 U.S. ___, ___, 131 S. Ct. 2074, 2080 (2011).[1] In other words, Galloway bears the burden of showing that, when Duhaime acted, "the law established the contours of a right so clearly that a reasonable official would have understood his acts were unlawful." *Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1557 (11th Cir. 1993).

---

[1]Historically the Supreme Court required lower courts to decide the constitutional issue before inquiring into whether the claimed right was clearly established. *See, e.g.*, *Scott v. Harris*, 127 S. Ct. 1769, 1774 (2009); *Saucier v. Katz*, 533 U.S. 194, 201 (2001). This rule, the Court reasoned, would "promote[] clarity in the legal standards for official conduct." *Wilson v. Layne*, 526 U.S. 603, 604 (1999). Since then the Court has backtracked, and lower courts can now address the constitutional and qualified immunity questions in either order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

### a. Qualified immunity on Galloway's excessive force claim (Count A)

In Count A, Galloway alleges that Duhaime used excessive force by suddenly attacking and then arresting him. As a threshold matter, the parties dispute what set of facts the Court should credit. On the one hand, Galloway operates under the assumption that the facts in the amended complaint control. On the other hand, Duhaime relies heavily on an affidavit filed by Galloway with his initial complaint. The affidavit states that Galloway pulled away from one of the officers when the officer grabbed his elbow, which suggests that Duhaime had a basis for initiating the use of force against Galloway. But can the Court consider this information at this stage? It is true enough, as Duhaime asserts, that Galloway's affidavit made up part of the original complaint. *See* Fed. R. Civ. P. 10(c). However, when a party files an amended complaint, the amended version supersedes the original. *See, e.g.*, *Fritz v. Sec. Life Ins. Co.*, 676 F.2d 1356, 1358 (11th Cir. 1982). And in Galloway's amended complaint, he omits any reference to him pulling away from the officers, alleging only that they approached and then beat him.

In *Oppenheimer v. F.J. Young & Co.*, 3 F.R.D. 220 (S.D.N.Y. 1943), a district court addressed this very question. There, the plaintiff amended his complaint and made reference to three exhibits filed with his original complaint. The court held that the federal rule allowing for adoption by reference to other pleadings, *see* Fed. R. Civ. P. 10(c), does not allow a party to incorporate by reference an exhibit attached to an abandoned pleading. 3 F.R.D. at 226; *see also* M.D. Ala. LR 15.1 ("Any amendment to a

pleading . . . must, except by leave of Court, reproduce the entire pleading . . . and may not incorporate any prior pleading, document or other papers by reference."). The *Oppenheimer* court's decision is persuasive.[2] The well-pleaded complaint rule makes the plaintiff master of the complaint, *see, e.g., Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987), and, as master, he can amend his complaint so as to change the underlying factual allegations to the extent the Federal Rules of Civil Procedure (and his attorney's ethical obligations) allow. Put differently, the plaintiff can decide to re-file the affidavits when amending his complaint or omit them if, for example, they do not comport with the factual allegations in the amended pleadings. Applying this rule to the case at hand, the Court will consider only the allegations in Galloway's amended complaint in deciding the qualified immunity question.

In excessive force cases, courts deploy an objective test that gauges the reasonableness of the officer's actions given the totality of the circumstances. *Graham v. Connor*, 490 U.S. 386, 396 (1989). Relevant factors include: "the severity of the crime, whether the suspect poses a threat to the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Saucier v. Katz*, 533 U.S. 194,

---

[2] The Court must note, however, that *Oppenheimer* was decided in 1943. In a sign of the times, the district court relied partly on how allowing incorporation by reference would be "quite inconvenient to the court to have to send to the Clerk's office for a file in order to learn the contents of exhibits attached to the discarded pleading." 3 F.R.D. at 226. In the electronic filing era, this concern no longer carries much weight since the court and the parties can easily pull up the incorporated documents electronically and without having to dig through the physical files. The Court nevertheless finds *Oppenheimer* persuasive for other reasons.

195 (2001) (citing *Graham*, 490 U.S. at 396). In judging the reasonableness of an officer's actions, courts have to avoid any hindsight bias by looking through the eyes of the officer on the scene at the time the incident occurred. *Garrett v. Athens–Clarke Cnty.*, 378 F.3d 1274, 1281 (11th Cir. 2004); *see also Graham*, 490 U.S. at 396 ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment."). Indeed, courts will not second-guess reasonable decisions made by an officer. *Carr v. Tatangelo*, 338 F.3d 1259, 1270 (11th Cir. 2003). Nor are government officials required to err on the side of caution in carrying out their discretionary functions. *Marsh v. Cnty. of Butler*, 268 F.3d 1014, 1030 n.8 (11th Cir. 2001) (en banc).

Here, all three *Graham/Saucier* factors weigh in favor of denying Duhaime's qualified immunity defense at this juncture. First, the amended complaint does not suggest that Galloway committed a crime—let alone a severe one—before Duhaime and Babinski approached him and began beating him. In *Lee v. Ferraro*, the Eleventh Circuit partly rested its decision denying qualified immunity on how the defendant arrested the plaintiff for honking her horn on a busy thoroughfare. 284 F.3d 1188, 1198 (11th Cir. 2002). Although the plaintiff's actions in *Lee* gave the defendant probable cause to make an arrest, the court of appeals found it "difficult to imagine a less significant crime," thus mitigating against the reasonableness of the defendant's later use of force. *Id.* This case does not even reach the level of *Lee*, because nothing in the amended complaint suggests

that Galloway committed a crime before Babinski and Duhaime approached him.

Second, nothing in the amended complaint suggests that Galloway posed a threat to the officers. According to Galloway's pleading, Babinksi and Duhaime asked for his identification and, when he could not produce it, they began beating him and eventually used their tasers on him. Galloway contends that they did this "without provocation, justification, or reason." (Doc. # 3 at ¶ 6.) In *Lee*, the plaintiff likewise alleged that she posed no threat to the officers before they initiated force against her. 284 F.3d at 1198. Similarly, in *Vinyard v. Wilson*, the court of appeals held that the plaintiff did not pose a threat to the defendant even though "she was screaming and using foul language in the patrol car," because this conduct "was a nuisance but not a threat." 311 F.3d 1340, 1347–48 (11th Cir. 2002). In each case, an Eleventh Circuit panel found the district court's denial of qualified immunity proper partly because of the lack of a threat posed by the plaintiff. That is precisely the case here. Hence the second *Graham/Saucier* factor weighs in Galloway's favor, too.

Third, and finally, the amended complaint specifically denies that Galloway ever resisted or attacked the officers. (*See* Doc. # 3 at ¶ 6.) Again *Lee* is instructive: there the court of appeals found that, because the plaintiff never resisted or attempted to flee, the officer's decision to lead her to the back of his car and slam her head into the truck amounted to excessive force and a clear violation of her constitutional rights. 284 F.3d at 1198. Here, Galloway's amended complaint suggests he never resisted or tried to flee

when the officers approached him. Thus the third *Graham/Saucier* favors him as well.

Moreover, while an officer has the power to use a reasonable amount of force in making a lawful arrest or investigatory stop, *Graham*, 490 U.S. at 396 (citing *Terry v. Ohio*, 392 U.S. 1, 22–27 (1968)), an Alabamian has the reciprocal right to use force in resisting an unlawful arrest. *See, e.g.*, *Sanders v. State*, 61 So. 336 (Ala. 1913) ("an attempt unlawfully to arrest gives the person sought to be arrested a right to resist"). Since the officers lacked a reason to arrest Galloway under the facts alleged, he actually would have had some leeway to resist once they attacked him and began beating him. So even assuming Galloway resisted in some manner after the attack began, he had a right to do so.

Based on this analysis, the Court finds that Galloway alleged facts which, if true, would establish that Duhaime violated his Fourth Amendment rights. Furthermore, under Galloway's version of the facts, the relevant constitutional rules are "so clear and the conduct so bad that case law is not needed to establish" the unlawfulness of Duhaime's conduct. *Vinyard*, 311 F.3d at 1350. Undoubtedly a reasonable officer knows that approaching a citizen and beating him when he cannot produce identification is unlawful. Duhaime therefore had fair warning, *see Hope v. Pelzer*, 536 U.S. 730, 743 (2002), that his alleged actions violated Galloway's Fourth Amendment rights.

Duhaime's motion to dismiss Count A on qualified immunity grounds is therefore due to be denied. He may still be able to prevail on his qualified immunity defense,

however, if at a later stage in the proceedings he shows that Galloway initially made an aggressive move towards him. *See Smith v. Mattox*, 127 F.3d 1416, 1420 (11th Cir. 1997). If he does, the Court will revisit the qualified immunity question on Galloway's excessive force claim.

### b. Qualified immunity on Galloway's unlawful arrest claim (Count B)

Duhaime also invokes the qualified immunity doctrine to shield him from Galloway's Fourth Amendment unlawful arrest claim. In Count B, the amended complaint alleges that Duhaime and Babinski lacked probable cause to arrest Galloway. (Doc. # 3 at ¶ 13.) Galloway claims that Babinski and Duhaime drove up to where he was standing, asked him and Brown for identification, and, when he could not produce it, "grabbed [him] by the neck and shoulder, wrestled him to the ground, and proceeded to beat him mercilessly." (Doc. # 3 at ¶ 5.)

Duhaime relies again on the initial affidavit filed by Galloway to support his qualified immunity claim. He contends that when Galloway pulled away from him he had probable cause to arrest Galloway for disorderly conduct, *see* Ala. Code § 13A-10-2 (1975), or obstructing governmental operations, *see id.* § 13A-11-7(a)(1). As a general rule, qualified immunity does in fact apply when the officer had probable cause to arrest a suspect for any offense. *Brown v. City of Huntsville*, 608 F.3d 724, 735 (11th Cir. 2010). But as discussed above, Galloway's amended complaint supplanted his original one and the affidavits attached to it. So the Court has used the facts as alleged in the

14

amended complaint. And taking those facts as true, the pleadings offer no hint as to any offense Duhaime reasonably could have believed that Galloway committed. To the contrary, Duhaime's entire argument rests on his assertion that Galloway pulled away from him, which, in turn, provided him with probable cause to make an arrest.

Because the Court will not credit Duhaime's version of the facts at this point in time, the qualified immunity issue turns on a single question: does the amended complaint suggest Duhaime had arguable probable cause to arrest Galloway? It goes without saying that an arrest without probable cause violates the Fourth Amendment. *See Kingsland v. City of Miami*, 382 F.3d 1220, 1232 (11th Cir. 2004); *Marx v. Gumbinner*, 905 F.2d 1503, 1505 (11th Cir. 1990). Yet an officer can still avail himself of the qualified immunity doctrine if he had arguable probable cause for the arrest. *Kingland*, 382 at 1232 (citing *Jones v. Cannon*, 174 F.3d 1271, 1283 (11th Cir. 1999)). This requires asking "whether 'reasonable officers in the same circumstances and possessing the same knowledge as the [d]efendants could have believed that probable cause existed . . .'" *Id.* (quoting *Von Stein v. Brescher*, 904 F.2d 572, 529 (11th Cir. 1990)). For example, an officer that lacks probable cause as a result of a reasonable mistake can use the qualified immunity doctrine to innoculate himself against suit. *See, e.g.*, *Hunter v. Bryant*, 502 U.S. 224, 227 (1991); *Post v. City of Fort Lauderdale*, 7 F.3d 1552 (11th Cir. 1993).

The facts alleged in the amended complaint do not suggest that Duhaime had

15

probable cause to arrest Galloway. Nor do they show that he had arguable probable cause—for instance, from a reasonable mistake—that would allow him to claim qualified immunity despite violating Galloway's constitutional rights. Accordingly, Duhaime's motion to dismiss is due to be denied at this point. Even so, there are always two sides to a story, and should it become apparent that Duhaime had arguable probable cause, the Court will revisit the qualified immunity question at a later date.

### c. Galloway's false report or complaint claim (Count C)

Galloway's amended complaint asserts that "all of the defendants" are liable "for filing a false report or complaint." (Doc. # 3 at ¶ 15.) Yet the facts alleged in this count refer only to Babinski drafting and submitting "three [c]omplaints and also three arrest reports that contained false statements alleging that Mr. Galloway committed criminal activity." (*Id.*) Because these allegations make no mention of Duhaime, let alone claim that he participated in preparing the complaints or arrest reports at issue, Galloway has failed to provide "enough facts to state a claim to relief that is plausible on its face" as to Duhaime. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007).[3] The claim against him in Count C is therefore due to be dismissed.

---

[3] Notably, Galloway's response fails to address the amended complaint's omission of Duhaime in this count. Nor does it provide any argument about why the Court should impute Babinski's alleged acts to Duhaime. This is a tacit admission by Galloway (or, more accurately, his counsel) that he has failed to state a claim against Duhaime for filing a false report.

16

### d. Galloway's negligent hiring and negligent supervision claim (Count D)

Although it is difficult to tell from the amended complaint, Count D does not appear to try to state a claim against Duhaime. Rather, it focuses on the acts and omissions of Henry County and the City of Abbeville. In the event that Galloway did in fact mean to have this count apply to Duhaime, it is dismissed for failure to state a claim, because nothing in the amended complaint suggests he has a supervisory role.

### e. Galloway's false imprisonment claim (Count E)

In Count E, Galloway alleges that, because Duhaime and Babinski lacked probable cause to arrest him, the two imprisoned him for crimes he did not commit "in violation of the Fourth Amendment." (Doc. # 3 at ¶ 19.) As the defendants point out, however, a plaintiff has to bring a false imprisonment claim under the Due Process Clause of the Fourteenth Amendment. *See Campbell v. Johnson*, 586 F.3d 838, 840 (11th Cir. 2009). Moreover, a due process claim under these circumstances requires showing common law false imprisonment combined with the defendant's deliberate indifference to the plaintiff's "right to be free from continued detention after it was or should have been known that the detainee was entitled to release." *Cannon v. Macon Cnty.*, 1 F.3d 1588, 1562–63 (11th Cir. 1993), *modified on other grounds*, 15 F.3d 1022 (1994); *see also West v. Tillman*, 496 F.3d 1321, 1327 (11th Cir. 2007).

Typically this involves a scenario where the defendant holds the plaintiff for a substantial period of time "after it was or should have been known that the detainee was

entitled to release." *Campbell*, 586 F.3d at 840. For example, the Fifth Circuit held that a defendant's detention sufficed when it lasted for "thirty days beyond the expiration of his sentence in the absence of a facially valid court order or warrant." *Douthit v. Jones*, 619 F.2d 527, 532 (5th Cir. 1980); *see also Ortega v. Christian*, 85 F.3d 1521, 1523–24 (11th Cir. 1996) (holding that detaining plaintiff for five months without probable cause states due process claim). In *Campbell v. Johnson*, the Eleventh Circuit held that a plaintiff stated a claim where the sheriff detained him and instructed his deputies not to release the plaintiff even though a court had approved his bail request. 586 F.3d at 840–42.

Here, Galloway alleges the defendants detained him for a "brief" period of time (*see* Doc. # 3 at ¶ 8) and admits that the defendants released him after he posted bond (*id.*). These allegations fall short of stating a claim under the Fourteenth Amendment's Due Process Clause. The brief period of time takes Galloway's case outside the reach of *Douthit* (30-day detention) and *Ortega* (5-month detention), and his release after posting bond removes it from the ambit of *Campbell* (refusing to release bonded prisoner). At any rate, such a brief detention is more properly addressed under the Fourth Amendment, s*ee Albright v. Oliver*, 510 U.S. 266, 274 (1994) ("The Framers considered the matter of pretrial deprivations of liberty and drafted the Fourth Amendment to address it."), thus making Galloway's false imprisonment claim duplicative of his unlawful arrest claim. Accordingly, Count E is due to be dismissed.

18

### f. State law immunity on Galloway's state law battery claim (Count F)

Galloway alleges Duhaime committed the tort of battery against him under state law. (Doc. # 3 at ¶ 21.) Duhaime responds by citing the Alabama Constitution, claiming that it provides for immunity from state law causes of action. *See* Ala. Const. art. I, § 14 ("That the State of Alabama shall never be made a defendant in any court of law or equity."). In response, Galloway concedes that his state law battery claim is due to be dismissed.

### B. Galloway's claims against the City of Abbeville

### 1. Claims due to be dismissed as a threshold matter

Counts E and F are due to be dismissed for the reasons discussed more fully above. In short, Count E duplicates Galloway's unlawful arrest claim and the defendants are immune to the claims asserted in Count F.

### 2. Municipal liability

"The Supreme Court has placed strict limitations on municipal liability under § 1983." *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998). Unlike corporations or other employers, municipalities do not usually answer for the acts of their agents in tort. *See, e.g.*, *Monnell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978). But this rule has an exception: a municipality may incur liability for the actions of a police officer when it promulgates an "official policy" that causes a constitutional violation. *See id.* at 694–94; *Gold*, 151 F.3d at 1350. To press a claim under § 1983 against a municipality,

"a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004). This requires a plaintiff's complaint against a municipality to "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Randall v. Scott*, 610 F.3d 701, 707 n.2 (11th Cir. 2010) (citation and internal punctuation omitted).

Galloway's amended complaint fails to point to a specific policy constituting deliberate indifference to Fourth Amendment rights, and so he cannot show that such a policy caused his harm. Moreover, his response brief only makes vague references to a "de facto policy or custom sanctioned by the City of Abbeville." (Doc. # 24 at ¶ 3, 4.) This simply does not suffice. Courts in this district have time and again called for something more than a bare-bones, passing reference to a policy or custom to state a claim against a municipality. *See, e.g.*, *Johnson v. Andalusia Police Dep't*, 633 F. Supp. 2d 1289, 1301–02 (M.D. Ala. 2009); *Manning v. Mason*, No. 10-cv-925, 2011 WL 1832539, at *4 (M.D. Ala. May 13, 2011) (dismissing claim where plaintiffs failed to identify a specific policy or custom). Galloway's municipal liability claims, because they offer nothing more than what this Court has deemed insufficient in the past, are due to be dismissed. This disposes of Counts A, B, and C against the City of Abbeville.

20

### 3. Galloway's negligent hiring, retention, and failure to supervise claim

In Count D, Galloway claims that the City of Abbeville, along with Henry County and Sheriff Maddox, should face liability for negligent hiring, retention, and failure to supervise. (Doc. # 3 at ¶¶ 16–17.) To this end, Galloway alleges that "Babinski and Duhaime had prior incidents and complaints of brutality and excessive force." (*Id.* at ¶ 17.) The City of Abbeville does not believe these allegations suffice to state a claim, arguing mainly that the amended complaint lacks any examples of prior behavior by the defendants that would have suggested either man would unlawfully arrest citizens and use excessive force against them.

In *Board of County Commissioners of Bryan County v. Brown*, 520 U.S. 397 (1997), the Supreme Court described the standard for a deliberate indifference claim based on a municipality's failure to investigate an employee's background. The Court held that a "plaintiff must demonstrate that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision." *Id.* at 411. In so doing, it explained that it sought to immunize municipalities against vicarious liability claims. *Id.* at 410. Hence *Brown* requires federal district courts to test the causal link between the hiring decision and the injury alleged, and municipal liability attaches only where looking into the applicant's background would lead a reasonable policymaker to determine the "plainly obvious consequence of the decision to hire the applicant would be a deprivation of a third party's federally

protected right." *Id.* at 411.

The Eleventh Circuit too has weighed in on the issue. In *Griffin v. City of Opa-Locka*, 261 F.3d 1295 (11th Cir. 2001), the circuit court of appeals held that the plaintiff produced sufficient evidence to find deliberate indifference based on inadequate screening. The testimony in that case showed the city hired its city manager without a background check and despite knowing he had problems with female employees in the past. *Id.* at 1314. The court held that this evidence sufficed to support a finding that the city ignored an obvious risk of the newly-hired city manager sexually harassing female employees. *Id.*

The district courts addressing deliberate indifference claims based on inadequately investigating an employee's background have taken *Brown* to heart. As a result, they have required the plaintiff to plead something more than a generic assertion of supervisory liability. For example, in *Cooper v. City of Starke*, the plaintiff's complaint failed to state a claim based on the municipality's hiring decision when it did "not set forth any factual allegations as to the backgrounds of [the officers]." No. 10-cv-280, 2011 WL 1100142, at *8 n.11 (M.D. Fla. May 23, 2011). In *Hill v. Robeson County*, a complaint failed to state a § 1983 claim based on a municipality's hiring practices even though the employee hired by the municipality had a manslaughter conviction for killing his wife. 733 F. Supp. 2d 676, 684–86 (E.D.N.C. 2010). The *Hill* court rested its decision on the plaintiff's failure to allege a strong causal connection between the

employee's 1981 manslaughter conviction and his alleged constitutional violations in 2007. *Id.* at 686.

Galloway, like the plaintiffs in *Cooper* and *Hill*, has failed to allege facts demonstrating a strong causal connection between the municipality's hiring of Duhaime and Babinski and the alleged constitutional violations the officers committed. In fact, the amended complaint is devoid of any examples of either Babinski or Duhaime committing constitutional violations in the past. And given the lack of factual content, Galloway has provided no basis upon which to gauge the causal connection between his injuries and the municipalities' actions. In addition, he concedes that the City of Abbeville did not supervise the task force, which wholly undermines his supervision claim against it. Therefore, his claims against the city for negligent hiring, training, and supervision are due to be dismissed.

### C. Galloway's claims against Henry County, Alabama

Counts A, B, C, D, E, and F are due to be dismissed for the reasons discussed more fully above. To summarize, Galloway's failure to allege a specific policy or custom causing his constitutional injuries doom the claims found in Counts A, B, and C against Henry County. The lack of any allegations related to past misconduct by Babinski and Duhaime call for dismissal of Count D too. As for the final two allegations, Count E duplicates Galloway's unlawful arrest claim and the defendants are immune to the claims in Count F. Accordingly, all of the claims against Henry County, Alabama, are due to be

dismissed.

### D. Galloway's claims against Sheriff Maddox

As with the City of Abbeville and Henry County, all of the claims against Sheriff

Maddox are due to be dismissed.

### VI. CONCLUSION

Having considered the parties' pleadings and briefs related to the various motions

to dismiss now before the Court, it is hereby ORDERED as follows:

1.     The Motion to Dismiss filed by John Duhaime (Doc. # 12) is GRANTED
       IN PART and DENIED IN PART. It is GRANTED to the extent that it
       asserts an official capacity claim against him and on Counts C, D, E, and F.
       It is DENIED as to Counts A and B.

2.     The Motion to Dismiss filed by the City of Abbeville (Doc. # 12) is
       GRANTED.

3.     The Motion to Dismiss filed by Henry County, Alabama (Doc. # 16), is
       GRANTED.

4.     The Motion to Dismiss filed by William Maddox (Doc. # 18) is
       GRANTED.

Done this the 2nd day of July, 2012.

_____
/s/ Mark E. Fuller
UNITED STATES DISTRICT JUDGE

24